22-00010MB

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Justin Taylor, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Snapchat Inc. (hereafter "Snapchat") to disclose to the government records and other information, including the contents of communications, associated with the Snapchat Account for "colter_bol05" that are at premises owned, maintained, controlled, or operated by Snapchat, a company headquartered at 63 Market Street, Venice, California 90291. The information to be disclosed by Snapchat and searched by the government is described in the following paragraphs and in Attachments A and B.

2. I am a Special Agent with Homeland Security Investigations and have been so employed since October 2017. I graduated from the HSI Special Agent Training Course at the Federal Law Enforcement Training Center in Glynco, Georgia. There, I received specific training in the investigation of offenses involving the sexual exploitation of children, including those in which the Internet and social media programs are used to further the exploitation. I have also completed the Internet Crimes against Children Undercover Chat Operations Training Course.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit

is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts as set forth in this affidavit, more fully set out below, there is probable cause to believe that the Snapchat Account associated with "**colter_bol05**" (hereinafter "SUBJECT ACCOUNT"), as described in Attachment A, contains evidence of violations of 18 U.S.C. §§ 2252 and 2252A, as described below and in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. 2252(a)(1) and 2252A(a)(1), which make it a crime to transport or ship child pornography in, or using a facility of, interstate or foreign commerce; 18 U.S.C. 2252(a)(4)(B) and 2252A(a)(5)(B), which make it a crime to possess, or knowingly access with intent to view, child pornography; and violations of 18 U.S.C. 2252(a)(2) and 2252A(a)(2), which make it a crime to receive or distribute child pornography in, or using a facility of, interstate or foreign commerce.

## **DEFINITIONS**

6.      The following non-exhaustive list of definitions applies to this affidavit and Attachment B to this affidavit:

a.      Child Pornography is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

b.      Child Erotica means materials or items that are sexually arousing to persons having a sexual interest in minors, but that are not, in and of themselves, obscene or illegal. In contrast to "child pornography," this material does not necessarily depict minors in sexually explicit poses or positions.  Some of the more common types of child erotica include photographs that are not sexually explicit, drawings, sketches, fantasy writing, and diaries.  See Kenneth V. Lanning, Child Molesters: A Behavioral Analysis (2001) at 65. Federal courts have recognized the evidentiary value of child erotica and its admissibility in child pornography cases.  See United States v. Cross, 928 F.2d 1030 (11th Cir. 1991) (testimony about persons deriving sexual satisfaction from and collecting non-sexual photographs of children admissible to show intent and explain actions of defendant); United States v. Caldwell, No. 97-5618, 1999 WL 238655 (E.D. Ky. Apr. 13, 1999) (child erotica admissible under Federal Rule of Evidence 404(b) to show knowledge or intent).

  c. Visual depictions include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See 18 U.S.C. § 2256(5).

  d. Minor means any person under the age of eighteen years.  See 18 U.S.C. § 2256(1).

  e. Sexually explicit conduct means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.  See 18 U.S.C. § 2256(2).

  f. Computer means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.  See 18 U.S.C. § 1030(e)(1).

  g. Computer hardware consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices), peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that

can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

h. Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic or other digital form. It commonly includes computer operating systems, applications and utilities.

i. Computer-related documentation consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software or other related items.

j. Computer passwords and data security devices consist of information or items designed to restrict access to or hide computer software, documentation or data. Data security devices may consist of hardware, software or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to unlock particular data security devices. Data security hardware may include encryption devices, chips and circuit boards. Data security software of digital code may include programming code that creates test keys or hot keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide or booby-trap protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

k. Internet Service Providers or ISPs are commercial organizations, which provide individuals and businesses access to the Internet. ISPs provide a range of functions

for their customers including access to the Internet, web hosting, e-mail, remote storage and co-location of computers and other communications equipment. ISPs can offer various means by which to access the Internet including telephone-based dial-up, broadband based access via a digital subscriber line (DSL) or coaxial cable data transmission, dedicated circuits or satellite-based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name such as a username or screen name, an e-mail address, and an e-mail mailbox and the subscriber typically create a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a coaxial cable system and can access the Internet by using his or her account name and password.

l.    ISP Records are records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.

m. Internet Protocol address or IP address refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a subscriber's computer at varying intervals at the discretion of the ISP. IP addresses might also be static, meaning an ISP assigns a user's computer a specific IP address which is used each time the computer accesses the Internet.

n. The terms records, documents and materials include all information recorded in any form, visual or aural, and by any means, whether in hand-made form (including, but not limited to, writings, drawings, paintings), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, printing and/or typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

o. Digital device includes any electronic system or device capable of storing, processing, interpreting or rendering data in digital form, including computer systems of various form factors (computer desktop systems, towers, servers, laptops, notebooks, netbooks, and tablets), personal digital assistants, cellular phones and smart phones,

peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors and drives intended for removable media; related communication devices such as wired and wireless home routers and modems; storage media such as electro-mechanical hard disks, solid state hard disks, hybrid hard disks, floppy disks, optical disks such as compact disks and digital video disks, magnetic tapes and volatile and non-volatile solid state flash memory chips; and security devices including dongles and flash chips.

  p. Image or copy refers to an accurate reproduction of information contained on an original physical item, independent of the electronic storage device.  Imaging or copying maintains contents, but attributes may change during the reproduction.

  q. Hash value refers to a value generated after data has been subjected to a cryptographic mathematical algorithm.  A hash value is akin to a digital fingerprint in that dissimilar data will not produce the same hash value after being subjected to the same hash algorithm.  Therefore, a hash value is particular to the data from which the hash value was generated.  Known hash values can be used to search for identical data stored on various digital devices and/or media as identical data will have the same hash value.

  r. Compressed file refers to a file that has been reduced in size through a compression algorithm to save disk space. The act of compressing a file will make it unreadable to most programs until the file is uncompressed.

  s. Internet refers to a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the

devices communicating with each other are in the same state. In order to access the Internet, an individual computer user must use an access provider, such as a university, employer, or commercial Internet Service Provider (ISP), which operates a host computer with direct access to the Internet.

## INFORMATION REGARDING SNAPCHAT

7. Snapchat, "is an image messaging and multimedia mobile application. One of the principal concepts of Snapchat is that pictures and messages are only available for a short time before they become inaccessible." A Snapchat user can take photos and/or videos and then choose which friends will receive the message. Once the content is sent and opened by the recipient, the photo/video will be deleted from the user's device after a certain amount of time, unless the receiver opts to save the photo and/or video. Snapchat users are able to save the photos and/or videos to their device or to "Memories," which is Snapchat's cloud-storage device.

8. Snapchat users can also add photo or video "snaps" to their "Story." Based upon the user's privacy settings, these images can be viewed by all "Snapchatters," or just by the user's friends for up to 24 hours. "Stories" can also be saved in "Memories."

9. Snapchat users can further send typed messages, photos, and videos to specific friends within the Snapchat app utilizing the "Chat" feature. A user can save part of the chat by tapping on the message they want to keep.

10. Social networking providers like Snapchat typically retain basic subscriber

information, to include, email addresses, phone numbers, account creation date, IP (Internet Protocol) timestamps and IP addresses of account logins and logouts, length of service (including start date), and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, users may communicate directly about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Snapchat typically retains records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. Under certain circumstances, these providers may also retain content from their servers, such as messages, photos, or videos.

11. Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat. In the event the Snapchat user's application crashes, the company also collects a list of other installed applications on the device to detect any potential software conflicts.

12. Therefore, the computers and servers of Snapchat are likely to contain all the aforementioned information, including stored electronic communications, photographs, and information concerning subscribers and their use of Snapchat, such as account access information, transaction information and account application.

# PROBABLE CAUSE

13.	On October 14, 2021, HSI Douglas was notified of NCMEC Cybertip 100660666.  The Cybertip was issued on September 8, 2021 and noted apparent child pornography by the submitter of the of the incident, which was Snapchat.  Details of the incident received from NCMEC included:

***Incident Type:*** *Child Pornography (possession, manufacture, and distribution)*
***Incident Time:*** *09-08-2021 06:35:40 UTC*
***Description of Incident Time:*** *The Incident Date Time value is when the most recent media file being reported was uploaded by the reported user*
***Suspect:***
***Date of Birth:*** *XX-XX-1999*
***Email Address:*** *bolingercolter37@gmail.com*
***Screen/User Name****: colter_bol05*
***IP Address:*** *65.124.30.34*
            *09-06-2021 21:01:46 UTC*
***Number of uploaded files:*** *1*
***Filename:*** *colter_bol05-None-eb12df12-f950-57e1-bcb2-90e81e7cb6f4~10-
           70983e80f5.mp4*

14.	SA Taylor reviewed the file attached to the cybertip which had already been viewed by Snapchat: "colter_bol05-None-eb12df12-f950-57e1-bcb2-90e81e7cb6f4~10-70983e80f5.mp4" is a 17 second video in .mp4 format showing a penis penetrating a vagina of a child who appears to be prepubescent. The female's body is shown from the lower sternum area to just above the knees during the above-mentioned sex act.  The camera then zooms in on the vaginal area.  The female's hips and waist are narrow and the female lacks any pubic hair.  From what is visible in the video file, it appears to SA Taylor and another HSI ICAC investigator that the female is prepubescent.[1]

---

[1] The video will be made available for review at the time this affidavit is sworn before the magistrate.

15. On October 14, 2021, HSI Douglas emailed Snapchat via their portal requesting the preservation of records and other evidence for Snapchat account "colter_bol05." Snap Inc. Law Enforcement Operations responded via email that the request was received and assigned ticket number 219879166 to the preservation request until legal process is received.

16. On October 19, 2021, HSI Douglas issued ICE Summons ICE-HSI-DO-2022-00014 to Bluespan Wireless LLC via email requesting subscriber information for the target IP 65.124.30.34. On October 21, 2021, SA Taylor received an email response from Bluespan LLC stating the IP was attached to their edge router. The IP addresses that are then distributed to their customers beyond that point are CGN (carrier-grade-NAT) addresses. Due to this circumstance the ISP could not provide further information regarding subscriber information.

## CONCLUSION

17. Based on all of the above facts, there is probable cause to believe that evidence, fruits, and/or property designed for use, intended for use, or used in committing violations of Title 18 U.S.C.§§ 2252 and 2252A, relating to possession, knowing access with intent to view, receipt, or distribution of child pornography in, or using a facility of, interstate or foreign commerce, is located on the servers of Snapchat with regard to username account **colter_bol05** as more specifically detailed in Attachment B.

## **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

18.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. § 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Snapchat to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of the Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

19.     Because the warrant will be served on Snapchat, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

20.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## CONCLUSION

21. Based upon the facts set forth in this affidavit and upon my experience and training, I believe that there is now probable cause to believe that the items listed in Attachment B to be seized constitute evidence of a crime, fruits of a crime and/or property designed for use, intended for use, or used in committing the crimes set forth above, and that such items are contained in the SUBJECT ACCOUNT, identified in Attachment A.

JUSTIN M TAYLOR
Digitally signed by JUSTIN M TAYLOR
Date: 2022.01.12 19:12:09 -07'00'

_____
Justin Taylor, Special Agent
Homeland Security Investigations

SUBSCRIBED TO AND SWORN TO
Before me this 12th day of January, 2022

_____
HONORABLE UNITED STATES MAGISTRATE JUDGE
ERIC J. MARKOVICH

22-00010MB

## ATTACHMENT A

**Property to be Searched**

Information associated with the Snapchat account having the username **"colter_bol05"** which is stored at premises owned, maintained, controlled, or operated by Snapchat, Inc., 63 Market Street, Venice, California, 90291

## ATTACHMENT B
### Particular Things to be Seized

**I. Information to be disclosed by Snapchat:**

For the period of August 1, 2021, 21:00:00 UTC through present, to the extent that the information is within the possession, custody, or control of Snapchat, including any photographs, videos, messages, records, files, logs or information that have been deleted but are still available to Snapchat, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snapchat is required to disclose the following information to the government for the Target Accounts:

1. All contacts, subscriber information, and personal identifying information, pertaining to the Snapchat accounts: **colter_bol05**;
2. All activity logs for the account and all other documents showing the user's posts and other Snapchat activities;
3. All photographs and videos, including those uploaded by the aforementioned Snapchat user ID, along with all photos/videos sent to this user via Snapchat, to include any located in Snapchat Stories, Memories, and/or Chats;
4. All other records of communications and messages made or received by the user, including all private messages, chat history and video calling history;
5. All "check-ins" and other location information;
6. All IP logs, including all records of the IP addresses that logged into the accounts;
7. Logs of all messages and Snaps sent and received, including all meta-data about the messages and Snaps and all information regarding the dates and times the messages and Snaps were sent or received;
8. The content of all messages and Snaps sent and received, including but not limited to any and all images, videos, or other messages or documents in any format;
9. The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or balk account number);
10. Information such as the model, mobile device phone number, identifiers such as MAC address and IMEI or MEID of devices used to access Snapchat; and
11. All records pertaining to communications between Snapchat and any person regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken.

**II. Information to be seized by the government**

All information described above in Section I that constitutes evidence, fruits, and/or property designed for use, intended for use, or used in committing violations of Title 18 §§2252 and 2252A, including, information pertaining to the following matters and the attempt and conspiracy to engage in such matters:

1. Any and all photographs, videos, visual depictions depicting minors, or other content related to the sexual exploitation of minors, including but not limited to communications and other content evidencing the actual and attempted sexual exploitation of minors, the distribution, receipt, and possession of child pornography, the actual and attempted transfer of images depicting children engaged in sexually explicit conduct, and the identification of any individuals involved in the same. This would include non-contraband images of minors and other individuals depicted in these images that may assist in the identification of minors who may be the victim of child exploitation or the suspects who are exploiting them;
2. Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts;
3. Any and all logs associated with any images of minors engaging in sexually explicit conduct, showing when and from which IP address any such images were viewed, shared, posted, downloaded, or otherwise accessed;
4. Any records relating to the identity of any minors depicted in any images within the subject account;
5. Any communications relating to sexual exploitation of minors, child pornography, or any sexual interest in minors; and
6. Records relating to who created or used the Snapchat accounts, **colter_bol05** including, but not limited to, records about their identities and whereabouts including records of session times and durations and log-in IP addresses associated with session times and dates;
7. Records relating to who communicated with the Snapchat accounts **colter_bol05**, regarding the access, facilitation, trade, sharing, or production of child sexual abuse material, including, but not limited to, records about their identities and whereabouts including records of session times and durations and log-in IP addresses associated with session times and dates;
8. Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed in Attachment A and other associated accounts.

### III. Means of Production by Snapchat

Snapchat Inc. shall disclose responsive data notwithstanding the provisions of Title 18 §§2252 and 2252A, if any, in electronic format by sending to Justin.m.taylor@ice.dhs.gov or via the United States Postal Service to Homeland Security Investigations- ATTN: Special Agent Justin Taylor, 2334 East Highway 80, Douglas, Arizona 85607.